[Cite as *State v. Parker*, 2017-Ohio-4382.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 15 MA 0174 |
| VS. | ) | |
| | ) | OPINION |
| TERRANCE W. PARKER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 15 CR 548

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiff-Appellee

Attorney Paul Gains
Mahoning County Prosecutor
Attorney Ralph Rivera
Assistant Prosecutor
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant

Attorney Edward Czopur
42 North Phelps Street
Youngstown, Ohio 44503

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: June 16, 2017

DeGENARO, J.

{¶1} Defendant-Appellant, Terrence W. Parker, appeals the judgment of the Mahoning County Court of Common Pleas convicting him of intimidation of a witness, menacing by stalking, disrupting public services, and two robbery counts, and sentencing him accordingly.

{¶2} On appeal, Parker asserts his robbery and intimidation convictions are not supported by sufficient evidence or are against the manifest weight of the evidence. He additionally argues the trial court committed plain error for failing to merge several of his convictions, or alternatively that trial counsel was ineffective for failing to argue merger. Finally, he asserts the trial court abused its discretion by denying his motion to sever the menacing by stalking count from the other counts. For the following reasons, Parker's assignments of error are meritless and the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} During the early morning of May 4, 2015, Parker came uninvited to the apartment of Melinda Gregory, a young woman who had recently ended a relationship with him. This occurred after she sent him several text messages asking him to leave her alone. Gregory was home with her roommate and a friend at the time. Among other things, it was alleged that Parker robbed Gregory at knifepoint, slashed a tire on Gregory's vehicle, threatened her friends with a knife, punched her in the face, and destroyed her cell phone after she said she would call police. After the incident, it was alleged that Parker threatened one of her friends who was there that night.

{¶4} As a result, Parker was ultimately indicted on the following nine counts: two counts of felonious assault, both pursuant to R.C. 2903.11(A)(2)(D), second-degree felonies; aggravated robbery, R.C. 2911.01(A)(1)(C), a first-degree felony; two counts of robbery, one pursuant to R.C. 2911.02(A)(1)(B), and the other pursuant to R.C. 2911.02(A)(2)(B), both second-degree felonies; two counts of intimidation, one pursuant to R.C. 2921.04(B)(1)(D) (victim), and the other pursuant to R.C. 2921.04(B)(2)(D) (witness), both third-degree felonies; menacing by stalking, R.C.

2903.211(A)(1)(B)(2)(e), a fourth-degree felony; and disrupting public services, R.C. 2909.04(A)(1)(C), a fourth-degree felony. Parker pled not guilty and counsel was appointed.

{¶5} The case proceeded to a jury trial. Before voir dire commenced, the State made an oral motion to amend the title of the crime from intimidation of a victim, to intimidation of a witness, noting there was no error in the subsection specified. The trial court sustained the motion.

{¶6} Defense counsel made an oral motion to sever the menacing by stalking count from the remaining counts. He noted that crime has an element relating to the prior propensities of the defendant, which could permit the State to introduce evidence of Parker's prior criminal record and possibly prejudice the jury with regard to the other counts. The trial court overruled the motion.

{¶7} The following pertinent evidence was adduced at trial. Melinda Gregory testified that in May 2015 she was a bar manager at Tiffany's Dolls; she met Parker while she was employed there; and the two had been romantically involved since November 2014.

{¶8} On May 3, 2015, Gregory and Parker exchanged several text messages in which Gregory ended their relationship, and told Parker to stay away from where she worked and lived. Gregory stated she repeatedly told Parker to leave her alone through the text messages. Gregory said she ended their relationship because women associated with Parker had been harassing her. On cross-examination, she read several other texts she sent to him about his alleged relationships with other women and conceded she was hurt and upset over his infidelity and dishonesty.

{¶9} Later that evening, Gregory was at her apartment with her roommate Kay Lee Izenour and friend Tracey Smelley. Around 3:40 a.m., Gregory heard a light tapping outside her bedroom window. Gregory crawled on the floor and peaked through the curtains and saw Parker standing outside her bedroom window. Gregory admitted on cross-examination that in the past when Parker knew she was sleeping

and wanted to wake her up to tell her he was there; he would communicate this by tapping on her bedroom window.

**{¶10}** A few minutes later, Gregory heard knocking at her front door, but refused to answer it. She then heard louder tapping on her bedroom window. Parker then proceeded to knock on the front door again: "he kept beating harder and harder on the door. And he was yelling, 'Open the door. Open the door.'" Gregory, Izenour, and Smelley all hid in the spare bedroom.

**{¶11}** Gregory stated she was scared because Parker told her he was previously incarcerated in a maximum security prison for nine years for felonious assault. He also told her about other violent things he had done in the past. Gregory stated that as she hid inside her apartment: "I was just really in fear. I just really didn't know what to expect from him * * *." She said she had never personally seen him become violent in the past. She said Izenour and Smelley also appeared terrified.

**{¶12}** After about 20-30 minutes, Parker stopped knocking. Gregory believed he had left the premises because she did not see him or his truck outside. Gregory and Izenour then went outside to ensure that Parker was gone—they looked for him in the hallways and outside, before getting into Gregory's vehicle. Smelley remained inside. Gregory then phoned Smelley and told him to come outside because Parker had left.

**{¶13}** As Gregory was backing her vehicle up, Parker appeared suddenly and started beating on her vehicle's window "with a Michael Myers knife in his hand" Parker was screaming for her to put the window down. Gregory was scared and refused to comply, she thought he was going to kill her.

**{¶14}** Parker then stabbed the driver's side tire of Gregory's vehicle, causing it to go flat and disabling the vehicle. Parker ran back inside Gregory's apartment building towards Smelley. Izenour followed Parker inside to try to "diffuse the situation." Gregory remained outside. Gregory's testimony about the incident up to this point was corroborated by Izenour's.

**{¶15}** Izenour stated that when she followed Parker inside the building, she

observed Parker confronting Smelley in the building's common hallway. Parker pointed a knife at Smelley's chest; cornered "him up against the wall in the hallway of the apartment[,]" and demanded that Smelley empty his pockets. Izenour stated that she spoke to Parker and attempted to diffuse the situation; Parker eventually ran back outside.

**{¶16}** According to Gregory, Smelley and Izenour also came back outside, as Parker began yelling at Gregory, who was now standing outside her vehicle looking at the damage to her tire. Parker still had the knife in his hand during this argument; he was accusing Gregory of a sexual relationship with Smelley, which she strongly denied. Gregory said she was terrified.

**{¶17}** When Gregory threatened to call the police, Parker, while still holding the knife, punched Gregory in the face. Gregory then punched him back, which caused Parker to drop the knife and Gregory to drop her cell phone. Izenour began screaming, thinking that Parker had stabbed Gregory since the hand he used to punch her was the same hand holding the knife. Izenour attempted to slide the knife away from Parker once it was on the ground but her shoe came off during the attempt. Parker regained possession of the knife. Gregory pushed Izenour out of the way while Parker attempted to stab Izenour. Gregory stated that she believed Parker would have been successful in stabbing Izenour had she not pushed her out of the way. At this point, Smelley was standing behind Gregory but not intervening in the situation.

**{¶18}** Gregory then tried to get her cell phone to call 911, but Parker grabbed the phone from her. He then smashed it several times on the ground until it broke; cash that Gregory had in her phone case fell out in the process. Parker picked up the money and fled the scene; he was subsequently apprehended in West Virginia by Boardman Police Officer Glenn Riddle who is assigned to the U.S. Marshal's fugitive task force. Izenour's testimony about what occurred in the parking lot this second time also corroborated Gregory's testimony.

**{¶19}** Around 4:13 a.m., Ambrosia Eddinger, Gregory's neighbor, testified she

was awakened by an argument outside in the parking lot. Eddinger stated she heard Gregory screaming, and observed Parker attempting to get Gregory's cell phone. Eddinger observed Parker throw Gregory's phone to the ground several times until it broke. Eddinger saw Izenour standing next to Gregory's Jeep and Smelley off to the right of the parking lot as this was happening. She heard Gregory yelling for someone to call the police, so Eddinger did. When police responded to the scene that night, Gregory and Izenour told them what happened but were afraid to give written statements.

{¶20} Police Officer Nicholas Newland was one of the responding officers, arriving at 4:28 a.m. Gregory identified Parker as the suspect and told Officer Newland that she had been assaulted and Parker had slashed her tire. Officer Newland stated that everyone was upset and hysterical. Smelley told Officer Newland that Parker held a knife to him and told him to empty his pockets, and that as a result he gave Parker his cell phone.

{¶21} On 8:36 p.m. that same day, Gregory said she sent Parker a text from a new cell phone confronting him about his conduct. She stated: "I hope you are happy hitting me, breaking my phone and slicing my tire and trying to kill me with a knife. * * *You did all of that for what? I should have really listened to what everyone said about you. You really need some help. Wish you the best. Please stay away from me. Of all people, I never thought you would do something like that."

{¶22} Parker responded via text stating: "Really u know I never hit u silly tell your dude tracy [Smelley] he better not look for me cause one word I here anyone after Mr I know his bm n Campbell 280 his address." Detective-Patrolman Glenn Patton spoke with Gregory on May 6, 2015, and obtained a screen shot from Gregory's cell phone that captured this text message, which was admitted into evidence. Gregory testified she understood the abbreviation "bm" to refer to Smelley's "baby mama," and took it to be a threat to Smelley. Gregory said she told Smelley about the threat because she "was scared for him and his kids."

{¶23} Det. Patton said his comparison of the cell phone company records for

Parker's phone to the list of text messages from the phone that were provided by Ohio Bureau of Criminal Investigation revealed that the text message from Parker threatening Smelley had been deleted from Parker's phone.

**{¶24}** Det. Patton said during the course of his investigation, Gregory told him she was fearful of Parker due to Parker's criminal history, which Parker had relayed to her. Over objection, a certified copy of the judgment entry for Parker's prior felonious assault conviction was admitted into evidence. Det. Patton also corroborated that Gregory's phone was broken and her tire slashed. Later, Det. Patton also listened to a number of jail-house phone calls Parker made. He said Parker admitted to breaking Gregory's phone.

**{¶25}** Gregory said she continued to text Parker for days after the incident. She told him she was no longer in Ohio, in an attempt to get him to leave her alone. She also began parking her car at the police station, wearing a wig as a disguise, and getting a ride to work to feel safer. About 10 days after the incident, on May 15, 2015, Gregory testified that Parker sent her a text stating: "All I did was break your fucking phone."

**{¶26}** Michael Dodson a computer scientific specialist employed with BCI analyzed Parker's cell phone and extracted several text messages, images, videos, and the device's history. He said that due to the nature of the device he was unable to recover texts that Parker had deleted. But he confirmed that a text sent by Parker at 8:36 p.m. on May 4, 2015—as shown in the screenshot from Gregory's phone—was missing from Parker's phone. Parker's phone showed two back-to-back text messages from Gregory, with no intervening message from Parker.

**{¶27}** After the incident, Gregory took her vehicle to Flynn's Tire. Daniel Boyle, a technician there, testified that he repaired Gregory's tire. He said the tire appeared to be slashed on its sidewall.

**{¶28}** The State did not call Smelley to testify, and Parker elected not to present evidence in his defense.

**{¶29}** After considering all of the evidence, the jury found Parker guilty of both

robbery counts, intimidation of a witness, menacing by stalking, and disrupting public services. He was acquitted on the other four counts.

**{¶30}** Following a sentencing hearing, the parties agreed that the three robbery offenses, which involved Gregory, should merge and the State elected to proceed with the R.C. 2911.02(A)(1)(B) count for sentencing purposes. No other merger arguments were made during sentencing. The trial court proceeded to sentence Parker to 8 years on the remaining robbery count, 36 months for intimidation of a witness, 18 months for menacing by stalking, and 18 months for disrupting public services. The trial court made findings relative to consecutive sentences and ordered that the menacing by stalking and disrupting public services counts to be served concurrently, but the others to be served consecutively, for an aggregate prison sentence of twelve and one-half years. The trial court also imposed three years of mandatory post-release control and ordered that Parker would receive 123 days of jail-time credit.

### Sufficiency and Manifest Weight

**{¶31}** In his first, second, sixth and seventh of eight assignments of error, Parker challenges his robbery and intimidation of a witness convictions as being unsupported by sufficient evidence and/or against the manifest weight of the evidence. For clarity of analysis, these assignments of error will be addressed together; they assert, respectively:

> Appellant's convictions for Robbery as contained in counts 4 and 5 were based on insufficient evidence as there was no concurrence between the mental state to commit a theft offense and when he had a weapon and/or threatened to and/or inflicted harm thereby requiring reversal.

> Appellant's convictions for Robbery as contained in counts 4 and 5 were against the manifest weight of the evidence as there was no concurrence between the mental state to commit a theft offense and

when he had a weapon and/or threatened to and/or inflicted harm thereby requiring reversal.

The conviction of intimidation of a witness was based on insufficient evidence as the State offered no proof that a criminal action was pending at the time of the alleged threat or that a threat was made and/or attempted.

The conviction for intimidation of a witness was against the manifest weight of the evidence as there is no allegation of a threat being made against the witness.

**{¶32}** Sufficiency and manifest weight are "quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). A sufficiency challenge measures whether there is sufficient evidence to send the case to the jury or support a verdict as a matter of law. *Id.* at 386. In essence, sufficiency is a test of adequacy and whether the state met its burden of production. *State v. Fullerman*, 7th Dist. No. 99 CA 0314, 2001-Ohio-3969, *4 (Aug. 14, 2001). Whether the evidence is legally sufficient is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E. 2d 148 (1955). On appeal, the issue is whether the trier of fact could find the essential elements of the offense were proven beyond a reasonable doubt after construing the evidence in a light most favorable to the state. *State v. May*, 2011-Ohio-6637, 970 N.E.2d 1029, ¶ 58 (7th Dist.).

**{¶33}** Conversely, weight of the evidence measures whether the state has met its burden of persuasion, and thus "concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *Thompkins* at 387. A conviction will only be reversed as against the manifest weight of the evidence if the fact-finder clearly lost its way, in order to correct a manifest miscarriage of justice. *Id.* This is because the trier of fact is in a better position to determine credibility issues, having viewed the demeanor,

voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). However, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002 WL 407847, *2 (Mar. 13, 2002), citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

### *Robbery*

{¶34} Count 4 concerns robbery under R.C. 2911.02(A)(1), which provides: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * Have a deadly weapon on or about the offender's person or under the offender's control[.]" Count 5 concerns robbery under R.C. 2911.02(A)(2), which provides: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]"

{¶35} Parker argues that there was insufficient evidence that a theft offense was committed. However, Gregory's testimony alone establishes two separate theft offenses. While in possession of a knife, and after punching Gregory in the face, Parker grabbed Gregory's cell phone from her. He subsequently began to smash the cell phone. When Gregory's cash came out of the cell phone case, he grabbed the money and fled. Based upon this evidence, any rational trier of fact could have found Parker guilty of robbery; he committed the requisite theft offenses (cell phone and cash) while in possession of a deadly weapon–a knife–and after threatening Gregory and punching her in the face.

{¶36} Turning to manifest weight, the jury reasonably believed Gregory's version of events. It was supported by the testimony of Izenour, Eddinger, and the responding officer. Accordingly, the jury did not lose its way in convicting Parker of robbery under either subsection.

### *Intimidation of a Witness*

**{¶37}** R.C. 2921.04(B)(2) provides:

> No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons: * * * A witness to a criminal or delinquent act by reason of the person being a witness to that act[.]

**{¶38}** Parker's specific sub-arguments regarding the sufficiency of the evidence for this offense will be discussed out of order for clarity of analysis. Parker asserts there is insufficient evidence that his text was threatening towards Smelley. He also makes much of the fact that Smelley did not testify at trial as a witness.

**{¶39}** Gregory said she received a text from Parker after the incident stating: "Really u know I never hit u silly tell your dude tracy [Smelley] he better not look for me cause one word I here anyone after Mr I know his bm n Campbell 280 his address." Det. Patton spoke with Gregory on May 6, 2015, and obtained a screen shot from Gregory's cell phone that captured this text message, which was admitted into evidence. Gregory testified she understood the abbreviation "bm" to refer to Smelley's "baby mama," and took it to be a threat to Smelley. Gregory said she told Smelley about the threat because she "was scared for him and his kids." Gregory and Eddinger testified that Smelley was outside in the parking lot and witnessed Parker's crimes.

**{¶40}** In light of Gregory's testimony, Smelley's testimony was not required to get a conviction on this charge. Smelley was a witness to the crimes, even though he was not called as a witness at trial. Further, Gregory testified that she interpreted the text to be threatening towards Smelley and his family.

**{¶41}** Parker also argues that in order to achieve a conviction under R.C. 2921.04(B)(2), the threat must have occurred after formal criminal proceedings against the defendant have commenced. Parker notes that he sent the text message

to Gregory on May 4, 2017 and the first court document in the trial court file below was an arrest warrant for Parker dated May 7, 2017—three days later. Thus, he argues, pursuant to *Wimley*, there is insufficient evidence supporting the intimidation of a witness conviction. Parker cites the Ninth District's *State v. Wimley*, 9th Dist. No. 25588, 2011-Ohio-5639 in support of his argument.

**{¶42}** *Wimley*, however, interpreted a prior version of R.C. 2921.04(B)(2), which includes language that is quite different from the current version of R.C. 2921.04(B)(2), quoted above. The former version provided:

> No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney *or witness involved in a criminal action or proceeding in the discharge of the duties of th*e attorney or *witness*.

Former R.C. 2904.04(B)(2), 146 Ohio Laws, Part I, 528.

**{¶43}** In *Wimley*, the court construed the phrase "involved in a criminal action or proceeding," to mean the statute is inapplicable until the witness is actually "involved in a criminal action or proceeding." *Wimley* at ¶ 11, quoting *State v. Malone*, 121 Ohio St.3d 244, 2009–Ohio–310, ¶ 19-20.

**{¶44}** In *Malone*, the Ohio Supreme Court looked to the specific statutory language in former R.C. 2921.04(B) and determined that the phrase "witness involved in a criminal action or proceeding," "requires a witness's *involvement* in a criminal action or proceeding, not his or her potential involvement." (Emphasis added.) *Malone* at ¶ 21. Thus, the Court concluded that the State had provided insufficient evidence to support the appellant's conviction under former R.C. 2904.04(B)(2), as no "formal process involving a court" had commenced prior to the appellant's alleged threats. *Id.* at ¶ 18, 30.

**{¶45}** The current version of R.C. 2904.04(B)(2), as amended effective 2012, does not include a requirement that the witness be involved in criminal action or

proceeding, but merely that the person be "a *witness to a criminal or delinquent act*[.]" R.C. R.C. 2904.04(B)(2). Thus, it appears *Malone* and *Wimley* are inapplicable for that reason.

**{¶46}** Parker argues that notwithstanding the amendment of R.C. 2904.04(B)(2), the logic of *Malone* and *Wimley* and their interpretation of the statute has been cited with approval since the amendment of the statute, and therefore the amendment does not defeat his argument. He cites *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, and *State v. Crocker*, 38 N.E.3d 369, 2015-Ohio-2528 (4th Dist.2015).

**{¶47}** However, *Straley* did not involve the amended version of R.C. 2904.04(B)(2); it merely utilized the Court's analysis in *Malone* to interpret the tampering with evidence statute, which, akin to the former version of R.C. 2904.04(B)(2), requires that " 'an official proceeding or investigation is in progress[.]' " *Straley* at ¶ 11, quoting R.C. 2921.12(A)(1). *See also Straley* at ¶ 17 (discussing *Malone*.)  Similarly, *Crocker* involves a tampering with evidence conviction, not a conviction for intimidation of a witness under the amended version of R.C. 2904.04(B)(2). *Crocker* at ¶ 2, ¶ 34-40.

**{¶48}** Based upon the language in the current version of R.C. 2904.04(B)(2), the threat need not have occurred after formal criminal proceedings against Parker have commenced to sustain a conviction under that statute.  Accordingly, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found Parker guilty of intimidation of a witness. Thus, there is sufficient evidence supporting Parker's conviction for that offense.

**{¶49}** As for manifest weight, an intimidation conviction turns on credibility determinations, i.e., whether Gregory interpreted the text message as a threat to Smelley and his family and whether she communicated that threat to Smelley. The jury is in the best position to determine matters of credibility, *Hill, supra*, at 304, and the jury did not lose its way in convicting Parker of this offense.

**{¶50}** In sum, the robbery and intimidation of a witness convictions are

supported by sufficient evidence and are not against the weight of the evidence. Accordingly, Parker's first, second, sixth and seventh assignments of error are meritless.

### Allied Offenses and Related Ineffective Assistance of Counsel Arguments

{¶51} Parker's third, fourth and fifth assignments of error, raise arguments regarding merger of some of the convictions, and a related argument that trial counsel was constitutionally ineffective for failing to argue merger of two of the offenses in the trial court. For clarity of analysis, these assignments of error will also be discussed together; they assert, respectively:

> Appellant's convictions for Aggravated Menacing and Robbery (under either count 4 or 5) are allied offenses of similar import thereby depriving the trial court from imposing a sentence on both counts pursuant to R.C. 2941.25.

> The convictions for Robbery (under either counts 4 or 5) and Disrupting Public Services are allied offenses of similar import thereby depriving the trial court from imposing a sentence on both counts pursuant to R.C. 2941.25.

> Appellant was denied the effective assistance of counsel in that counsel failed to argue for merger of Disrupting Public Service and/or menacing by stalking with the convictions for Robbery.

{¶52} Pursuant to R.C. 2941.25(A), "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However, "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all

such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

**{¶53}** The requirement to merge allied offenses is mandatory, occurs at sentencing, and may be reviewed for plain error even when no allied offense objection is raised at trial. *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, 922 N.E.2d 923, ¶ 20, 26, 31. "While plain error may be reviewed by an appellate court, plain error must still be demonstrated by the record." *State v. Peck*, 7th Dist. No. 12 MA 205, 2013–Ohio–5526, ¶ 15.  In that regard, the Ohio Supreme Court recently stated:

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

**{¶54}** The Ohio Supreme Court recently addressed the issue of allied offenses of similar import requiring merger in *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892. The Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true: the conduct constitutes offenses of dissimilar import, the conduct shows the offenses were committed separately, or the conduct shows the offenses were committed with separate animus. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses

involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

### *Menacing by Stalking/Robbery*

{¶55} Parker first argues that his convictions for menacing by stalking and robbery are allied offenses of similar import, which should have merged. He recognizes that counsel failed to argue merger to the trial court and therefore plain error review is required. Parker was convicted of menacing by stalking pursuant to R.C. 2903.211(A)(1), which provides:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶56} Parker alleges that this count should have merged with one of the robbery counts. "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control; (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]" R.C. 2911.02(A)(1) and (2).

{¶57} Around 3:40 a.m., Gregory heard a light tapping outside her bedroom window. Gregory crawled on the floor and peeked through the curtains and saw

Parker standing outside her bedroom window. A few minutes later, Gregory heard knocking at her front door, but refused to answer it. She then heard louder tapping on her bedroom window. Parker then proceeded to knock on the front door again: "he kept beating harder and harder on the door. And he was yelling, 'Open the door. Open the door.' " Gregory, Izenour, and Smelley all hid in the spare bedroom.

{¶58} Gregory stated she was scared because Parker told her he was previously incarcerated in a maximum security prison for nine years for felonious assault. He also told her about other violent things he had done in the past. Gregory stated that as she hid inside her apartment: "I was just really in fear. I just really didn't know what to expect from him * * *." She said she had never personally seen him become violent in the past. She said Izenour and Smelley also appeared terrified.

{¶59} After about 20-30 minutes, Parker stopped knocking. Gregory believed he had left the premises because she did not see him or his truck outside. Gregory and Izenour then went outside to ensure that Parker was gone—they looked for him in the hallways and outside, before getting into Gregory's vehicle. Smelley remained inside. Gregory then phoned Smelley and told him to come outside because Parker had left.

{¶60} As Gregory was backing her vehicle up, Parker appeared suddenly and started beating on her vehicle's window "with a Michael Myers knife in his hand" Parker was screaming for her to put the window down. Gregory was scared and refused to comply, she thought he was going to kill her.

{¶61} Parker then stabbed the driver's side tire of Gregory's vehicle, causing it to go flat and disabling the vehicle. Parker ran back inside Gregory's apartment building towards Smelley. Izenour followed Parker inside to try to "diffuse the situation." Gregory remained outside.

{¶62} Parker's conduct established his conviction for menacing by stalking well before Parker attacked Gregory and robbed her outside of the apartment complex. It was not until Parker returned to the parking lot that he robbed Gregory of her cell phone and cash. Thus, the menacing by stalking was complete before the

robbery took place. The trial court did not commit plain error by failing to merge the two offenses.

**{¶63}** Parker also argues that trial counsel was ineffective for failing to argue these convictions should merge. To prove ineffective assistance of counsel, the defendant must satisfy a two-prong test; that counsel's performance has fallen below an objective standard of reasonable representation, and that he was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph two of the syllabus. As these offenses should not have merged, counsel was not ineffective for failing to raise that argument in the trial court.

### Robbery/Disrupting Public Services

**{¶64}** Next Parker argues that his convictions for disrupting public services and robbery should have merged. He recognizes that counsel failed to argue merger to the trial court and therefore plain error review is required.

**{¶65}** Parker was convicted of disrupting public services pursuant to R.C. 2909.04(A)(1) which provides: "[n]o person, purposely by any means or knowingly by damaging or tampering with any property, shall * * * Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; * * * being used for public service or emergency communications[.]"

**{¶66}** Gregory testified that when Parker returned outside following his encounter with Smelley and Izenour, Parker began to argue with Gregory and accuse her of being in a relationship with Smelley. Both Gregory and Izenour stated that Parker punched Gregory in the face, while still holding the knife, after Gregory told him she was going to call the police. The punch caused Gregory to drop her cell phone. Izenour began screaming because she thought Parker had stabbed Gregory. Gregory stated that she and Parker then struggled over her cell phone. As Gregory was trying to retrieve her phone to call 911, Parker grabbed the phone from her and smashed it several times on the ground until it broke. Parker then picked up the money that fell out of Gregory's phone case and fled the scene with it.

**{¶67}** Thus, there was separate conduct and therefore distinct crimes. The two robberies already merged with one another for sentencing purposes. Parker's act of smashing Gregory's cell phone and thus prohibiting Gregory from calling 911 is a distinct act from stealing the cash that fell out of the cell phone case. Thus, there was no plain error in failing to merge the disrupting public services with the robbery count. Similarly, trial counsel was not ineffective for failing to raise that argument in the trial court.

**{¶68}** In sum, as the trial court properly did not merge either the menacing or disruption convictions with the robbery convictions, Parker's third, fourth and fifth assignments of error are meritless.

### Failure to Sever Menacing by Stalking Count

**{¶69}** In his eighth and final assignment of error, Parker asserts:

Appellant was prejudiced by the joinder of the Menacing by Stalking Count with all other Counts as this permitted the State to introduce evidence of Appellant's criminal history without Appellant testifying.

**{¶70}** Parker contends that the trial court abused its discretion when it refused to sever the menacing by stalking count from the rest of the charges. He argues that evidence of his criminal history would have been inadmissible at trial for any of his charges except menacing by stalking.

**{¶71}** Pursuant to Crim.R. 8(A), two or more offenses may be charged in the same indictment if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Joinder of criminal offenses in a single trial is favored. *State v. Brinkley*, 105 Ohio St.3d 231, 824 N.E.2d 959, 2005–Ohio–1507, ¶ 28. However, Crim.R. 14, entitled, "Relief from prejudicial joinder," provides in pertinent part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, information, or complaint, or by such joinder for trial together of indictments, * * * the court shall order an election or separate trial of counts, * * * or provide such other relief as justice requires. * * *

**{¶72}** When challenging the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14, the defendant bears the "burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *State v. Rusnak*, 7th Dist. No. 15 JE 0002, 2016-Ohio-7820, ¶ 39, quoting *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

**{¶73}** Further, "when the evidence of the other crimes would be admissible even if the counts were severed and the evidence of each crime is distinct and straightforward, then joinder is not prejudicial." *Rusnak* at ¶ 39, citing *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). It is well-settled that pursuant to Evid.R. 801(D)(2)(a) a defendant's statement offered against him is not hearsay and thus admissable. *See State v. Karl*, 142 Ohio App.3d 800, 811, 757 N.E.2d 30 (7th Dist.2001), *State v. Spires*, 7th Dist. No. 04 NO 317, 2005-Ohio-4471, ¶36-38.

**{¶74}** At trial, Gregory testified that Parker previously told her that he had been convicted of felonious assault and incarcerated in a maximum security prison for nine years, as well as other various violent acts in his past. She said this caused her to be fearful of him. As Parker has rightly conceded, this evidence would have been admissible under Evid.R. 801(D)(2)(a) at a separate trial had the menacing charge been severed. Moreover, it is admissible as to the two intimidation counts.

**{¶75}** Further, he cannot demonstrate prejudice. As we held in *Rusnak,* Gregory's testimony is admissible and the evidence of each offense is distinct. This is borne out by the fact that the jury found Parker not guilty of several more serious

offenses, including two counts of felonious assault. Thus, there was no prejudice in allowing the counts to be tried together. The judgment entry of Parker's prior felonious assault conviction, which concededly would not likely have been admissible in a separate trial on the remaining crimes had the menacing charge been severed, merely supports Gregory's admissible testimony about what Parker told her about his criminal history; thus it is cumulative and not prejudicial.

{¶76} Thus the trial court did not abuse its discretion by failing to sever the menacing by stalking count from the remaining counts. Parker's eighth and final assignment of error is meritless.

{¶77} In sum, Parker's convictions for robbery and intimidation of a witness are supported by sufficient evidence, and are not against the manifest weight of the evidence. The trial court did not commit plain error by failing to merge some of the offenses, and similarly counsel was not ineffective for failing to raise this issue to the trial court. Finally, the trial court did not err by failing to sever the menacing by stalking count from the other offenses. All of Parker's eight assignments of error are meritless and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, P. J., concurs.