OPINION
{¶ 1} Defendant-appellant Carolyn J. Spires appeals from her felony conviction entered in the Noble County Common Pleas Court. She presents issues surrounding the admissibility of recorded telephone calls from an inmate, the failure to indict on complicity, and the weight of the evidence. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} An investigator at the Noble County Correctional Institution had been monitoring the outgoing phone calls made by inmate Mike Atkins for approximately five years. He became suspicious when the inmate and his "mom" made cryptic references to preparing a package of building materials and seeing a man about building a house over a couple week period.
 {¶ 3} For instance, the inmate instructed his mom to go see "that man about that house again," advising, "That one's cheaper than the other one." (See recording AA1F1OUA.V02). In the next call, the inmate repeated that one man has cheaper houses than the other one and told his mom to get someone to go see the man as soon as possible. The inmate then stated, "one in each," to which his mom responded, "three of them in it?" The inmate then said, "I'd make it four, but do it in three." (See recording AB1D1OSU.V02).
 {¶ 4} In a call a few days later, the mom advised: "I been checking some places. I'll get it together this week. In the green right, four?" The inmate responded, "You might as well put one for Dale in there." His mom said she would try. (See recording AD1F1OWF.V02). A couple days after that, the inmate asked, "What about the other . . ." to which his mom responded, "I ain't got it yet. I been pricing it." (See recording AF1F1OYX.V02).
 {¶ 5} In another call the inmate said, "Talking about houses, we need to build that one." His mom agreed. The inmate told her to have various people help "build it." He also stated, "Same spot as before-that's a good neighborhood." His mom said she would "start it this week." The inmate complained, "I'm talking about tomorrow; we started this last week." (See recording AJ1F1000.V02). In yet another call, the inmate prompted his mom to "take care of that this week," and his mom promised she would. (See recording AL1F1O3E.V02).
 {¶ 6} Later, when the inmate asked his mom for a progress report, she advised that she would be "picking it up on Saturday." The inmate said, "Saturday's cool," but said he "need[ed] five instead of four" and talked about who can "build it cheaper." He advised that she should not trust Hector to help in the building process much because "his hands are quicker than the eyes." The inmate's mom responded, "Not if it's already built." (See recording AN1I104N.V02).
 {¶ 7} In another call, the inmate's mom said she was "waiting on this guy to come with your shit." She mentioned getting "material" and said another guy does not know if he could supply five or not. (See recording AR1E10G4.V02). When the inmate called later, his mom cryptically stated, "two by fours up here are cheap, same price. Butch went to get two by fours. Randy's got to go get nails." (See recording AR1F10A4.V02).
 {¶ 8} As he believed he was hearing code for a drug delivery to the prison, the investigator contacted the Ohio State Highway Patrol. They set up surveillance on the night of October 27, 2002. After midnight, a vehicle stopped in front of the prison.
 {¶ 9} An occupant exited the car and hid a green pop bottle on the grounds of the prison behind a maintenance shed. The bottle contained 98.021 grams of marijuana and .177 grams of heroin. Inmate Atkins' brother and uncle were the passengers in the vehicle.
 {¶ 10} After the arrest of the inmate's brother and uncle and the driver, the inmate, who was as of yet unaware of the ruined drug drop, called his mom. She stated, "Lost a load of two by fours. They got broke." When the inmate asked how, she responded, "On the country road; they lost `em. They got lost and broke. Everything's upside down." Unbelievably, she then pondered on the recorded line, "listening to everything going on. I don't know how." (See recording AS1F10AB.V02). When the inmate called back later and asked his mom if there were two left out of four, she told him, "No, everything's gone." He then complained, "I never wanna hear about someone getting' high. I need something in like a bad way." (See recording AS1F1OAO.V02).
 {¶ 11} Relevant to this case, Carolyn Spires [appellant herein] was indicted on two counts of illegally conveying drugs onto the grounds of a detention facility in violation of R.C. 2921.36(A)(2), third degree felonies. She filed a motion in limine to exclude recordings of telephone calls between the inmate and the person alleged to be her, claiming there was no identification or authentication of the voice as belonging to her. She filed another motion in limine to exclude calls between the inmate and other individuals.
 {¶ 12} At trial, the court denied the former motion and allowed recordings of calls between the inmate and the person he called "mom." The trial court granted the latter motion and required redaction of the statements of individuals other than the inmate and his "mom." However, redaction was not required where the phone answerer made statements to the inmate such as, "Here's your mom."
 {¶ 13} The case was tried to a jury. The court instructed the jury on complicity, and the jury found appellant guilty of two counts of complicity in the commission of illegally conveying drugs onto the grounds of a detention facility. On March 19, 2004, the court sentenced appellant to two years on each count to run concurrently. Appellant filed the within appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 14} Appellant sets forth four assignments of error, the first of which contends:
 {¶ 15} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN PERMITTING USE OF TAPE RECORDINGS/DIGITAL TAPE RECORDED STATEMENTS CONTAINING HEARSAY, PREJUDICIAL INFORMATION, WHICH LACKED AUTHENTICATION AND IDENTIFICATION."
 {¶ 16} Initially, appellant notes that the entire case against her was based upon the taped telephone conversations and thus if they were erroneously admitted, then reversible prejudice is clear and obvious. She basically presents two subassignments under assignment of error number one. The first subassignment argues that the state failed to properly authenticate the tapes by identifying that it was her voice on the tapes. She notes that the investigator never met her before or heard her speak in person. She also complains that the state failed to submit any documentation showing that the telephone number the inmate called was the number assigned to her by the telephone company.
 {¶ 17} The state responds that the investigator heard inmate Mike Atkins converse with someone he called "mom" hundreds of times over a period of four to five years. (Tr. 48, 52). The investigator testified that he came to know this woman's voice and that the voice was very distinctive. (Tr. 52). He also personally viewed appellant during visiting hours and saw that she signed in as Carolyn Spires, mother of inmate Mike Atkins. (Tr. 50-51). He noted that application for the visitation process requires official photographic identification as does each visitation itself. (Tr. 49).
 {¶ 18} The investigator then explained that the prison monitors all calls placed by the inmates and that the system records not only the actual conversation but also the name of the inmate who placed the call and the telephone number the inmate dialed. (Tr. 52). He noted that the number where inmate Atkins reached his "mom" many of the times was the same number appellant put on her own visitor's application, where she disclosed that she was the mother of inmate Mike Atkins. (Tr. 53). Apparently, she later changed the number, and thus, to determine the owner of this second number where inmate Atkins reached his "mom," the investigator performed a reverse search of the white pages and came up with appellant's name. (Tr. 53).
 {¶ 19} The question is whether this testimony sufficiently establishes identification of appellant as the voice on the tapes. The admission of evidence lies within the broad discretion of the trial court. State v.Issa (2001), 93 Ohio St.3d 49, 64. Hence, a reviewing court does not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. Id. Hence, before prejudice is relevant to the appellate analysis, we must first determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in finding that appellant's voice was sufficiently identified and authenticated. SeeState v. Barnes (2002), 94 Ohio St.3d 21, 23.
 {¶ 20} The following portions of Evid.R. 901 are relevant:
 {¶ 21} "(A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 {¶ 22} "(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 {¶ 23} "(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.
 {¶ 24} "* * *
 {¶ 25} "(5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
 {¶ 26} "(6) Telephone conversations. Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called * * *."
 {¶ 27} Authentication is a form of relevancy; it connects the evidence to the person involved in the case. See 1980 Staff Note to Evid.R. 901. Therefore, in order to satisfy the authentication or identification requirement for admissibility of the tapes, the state must have submitted sufficient evidence that the woman's voice on the tapes is appellant's voice.
 {¶ 28} Contrary to appellant's suggestion, Evid.R.901(B)(5), dealing specifically with voice identification, does not state, "opinion based upon hearing the voice in person." Rather, it states, "opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."
 {¶ 29} We also point to the following passage in the Staff Notes to Evid.R. 901: "Hence, in litigation between X and Y, if X wishes to introduce into evidence a letter handwritten and signed by Y, X could `authenticate' the letter by direct testimony to the effect that he recognizes the handwriting and signature as that of Y because of previous correspondence between X and Y." This does not provide that X can only authenticate the letter if he has previously witnessed Y write.
 {¶ 30} The Staff Note also provides: "Thus, X receives a telephone call purportedly from Y. If the telephone call is to be accepted as evidence in a trial, X may `authenticate' or `identify' the voice of Y by preliminarily testifying that he is familiar with the voice of Y as a result of previous conversations with Y." This Staff Note does not require the previous conversation to have been in person.
 {¶ 31} There is no one way to authenticate a recorded voice, and there is no per se rule of live and in person experience with a voice. Rather, the surrounding circumstances of the familiarity with the voice are relevant to the trial court's exercise of discretion.
 {¶ 32} Moreover, as to an alternative authentication method, nothing in Evid.R. 901(B)(6) requires documentary evidence to prove that a telephone number was dialed or that it belongs to a certain person. (We note that there were no objections regarding the best evidence rule concerning the telephone number presented; rather, the arguments presented deal with authentication of a voice under Evid.R. 901). Nothing in Evid.R.901 prevents a witness from testifying to how he came to know the number called and how he discovered whose number that was. Thus, sufficient authentication also existed in the investigator's testimony that the prison telephone system records the number dialed by the inmate and that one of the numbers dialed was the same one that appellantherself placed on her visitor's application (and the other number was the same one a reverse number search established was assigned by the telephone company to appellant).
 {¶ 33} Further, the voice's acceptance of being called "mom" can factor into considerations of self-identification or identification in general. We also note that she laughed in agreement when the inmate joked, "I thought I got your genes, but now I think Hector got yours, and I got dad's." (See recording AD1F10WF.V02).
 {¶ 34} And, even if appellant were correct in her argument that the state's authentication did not fit under the examples in the rule, the list of authentication methods is not exhaustive and the combination existing herein would sufficiently authenticate the recorded voice. The state need only set forth a prima facie showing of authentication. See, e.g., State v. Santurri (June 14, 2000), 9th Dist. No. 98CA007262. Under the circumstances testified to by the investigator, the trial court did not abuse its discretion in determining that the state sufficiently authenticated and identified the voice on the tapes as belonging to appellant. Hence, the first subassignment of appellant's first assignment of error is overruled.
 {¶ 35} We now move to appellant's second subassignment under assignment of error number one. Here, appellant claims that any recorded statements made by someone other than the person alleged to be appellant herself, constitute inadmissible hearsay. Specifically, she contends that the jury should not have been permitted to hear what the inmate said or what the person who answered the phone stated. She urges that even if the use of the word "mom" could be considered identification as discussed above, this "mom" label was hearsay made by out of court declarants.
 {¶ 36} An admission by a party opponent is not hearsay. Evid.R. 801(D)(2). Thus, a statement is admissible if:
 {¶ 37} "[t]he statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, * * * or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."
 {¶ 38} As appellant concedes, taped statements attributed to her are not hearsay. Evid.R. 801(D)(2)(a). However, she fails to recognize that admissions by a party opponent include the statements or questions to which she responds; otherwise, the statements would mean nothing in many contexts. See, e.g., State v. Twitty, 2d Dist. No. 18749, 2002-Ohio-5595, ¶ 27 (witness can testify to conversation overheard between defendant and his mother, including statements made by mother). As specified in the rule, it is not just the defendant's own words but the words of others which she manifests her adoption.
 {¶ 39} Thus, when she responds to being called "mom," this can be considered a statement which she manifested her adoption or belief in its truth since she failed to deny the label. Evid.R. 801(D)(2)(b). And, she also manifested her adoption or belief in the truth of many of the statements made by the inmate, to which her responses were undisputedly admissible.
 {¶ 40} Additionally, inmate Atkins was a co-conspirator since he was the one instructing appellant to purchase, package, and have delivered construction materials to a good neighborhood (which turned out to be code for: buy marijuana and heroin, put the drugs in a green bottle, and have the bottle delivered to the prison grounds). The statements by inmate Atkins were made during the course of and in furtherance of the conspiracy as he was placing his order and instructing his contact on the outside to buy drugs, package them, and arrange for delivery. The last requirement in Evid.R. 801(D)(2)(e) of independent proof of the conspiracy does not impose a high burden; it merely means that the state must make a prima facie showing sufficient to raise the inference of a conspiracy. See State v. Stores (Mar. 22, 1996), 7th Dist. No. 96CA24, citing State v. Carter (1995), 72 Ohio St.3d 545, 550. Here, there was more than a prima facie showing of a conspiracy.
 {¶ 41} A "package" in the form of a green bottle arrived at the prison as scheduled, this package contained marijuana and heroin, and this package was delivered by the brother and the uncle of inmate Atkins. Some of the incriminating calls to appellant were made to this uncle's house while she was visiting. (Tr. 81). Also, this brother is the "Hector" which the inmate told his mom to watch during construction of the package since he cannot be trusted near the building material and that his hands are faster than the eyes. (Tr. 90). And, appellant's statements in the tapes are not hearsay and also constitute independent proof of a conspiracy. State v. Jurek (1989), 52 Ohio App.3d 30, 35. For instance, just after the occupants of the vehicle which made the drug drop were arrested, she spoke to the inmate and made cryptic and incriminating statements such as that they lost the load of two-by-fours.
 {¶ 42} Finally, any statements by the person answering the phone that they would get the inmate's "mom," could be part of the conspiracy and in furtherance of it. For instance, at one point, the person answering the phone who said she would get the inmate's "mom" first revealed that they were gathering things up and "starting to build." This person also received instructions from the inmate to keep Hector away from the "building blocks." (See recording AR1F10A4.V02). Regardless, any unredacted statement of a voice answering the phone referring to "your mom" are harmless due to the admissible self-identification by appellant's own manifestations. For the reasons set forth above, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 43} Appellant's second assignment of error alleges:
 {¶ 44} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO GRANT THE MOTION OF THE DEFENDANT FOR CRIMINAL RULE 29 JUDGMENT OF ACQUITTAL."
 {¶ 45} When appellant moved for acquittal on the grounds that she was not present at the prison for the drop, the court said that the state was entitled to a complicity instruction. She now complains that the court sua sponte allowed a complicity charge since the indictment implied that she was a principal offender and thus she prepared her case accordingly.
 {¶ 46} Crim.R. 7(D) deals with amendment of indictments. First, we note that the language of the rule allows the court to sua sponte amend the indictment as it does not require a state's motion. Regardless, here, the state asked for a complicity instruction prior to the court finding that the state was entitled to one. (Tr. 103).
 {¶ 47} More on point here is the complicity statute. Complicity is defined in R.C. 2923.03(A) and includes soliciting or procuring, aiding and abetting, conspiracy, and causing an innocent or irresponsible party to commit an offense. Thereafter, the statute provides:
 {¶ 48} "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F).
 {¶ 49} This means that an accomplice may be prosecuted as the principal if he aids or abets in committing the offense with the culpability required for commission of the offense. State v. Coleman
(1988), 37 Ohio St.3d 286, 289. It is oft-stated that the defendant is on notice by virtue of the complicity statute itself that evidence could be presented that he is either a principal offender or an aider and abettor. See, e.g., State v. Ensman (1991), 77 Ohio App.3d 701 (11th Dist.);State v. Dotson (1987), 35 Ohio App.3d 135 (3d Dist.); State v.DeBaker (Jan. 6, 1982), 1st Dist. No. C-800746.
 {¶ 50} It is well-established that R.C. 2923.03(F) allows the trial court to instruct on complicity even if it is not mentioned in the indictment. See, e.g., State v. Tripplett (Dec. 10, 1999), 11th Dist. No. 98-L-161; State v. Tumblesen (1995), 105 Ohio App.3d 693 (12th Dist.); State v. Humphrey (Jan. 3, 1991), 2d Dist. No. 2695; Hill v.Perini (C.A. 6, 1986), 788 F.2d 406; State v. Koontz (1979),65 Ohio App.2d 264. See, also, State v. Strub (1975), 48 Ohio App.2d 57
(7th Dist.). As such, the trial court was permitted to instruct on complicity even in the absence of an indictment on complicity. This argument is thus overruled.
 {¶ 51} As for any general arguments regarding the motion for acquittal, we turn to the law on sufficiency of the evidence. An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using basically the same standard that an appellate court uses to review a sufficiency of the evidence claim. State v. Carter (1995),72 Ohio St.3d 545, 553; State v. Mayas (Dec. 6, 2000), 7th Dist. No. 98JE14. A Crim.R. 29 motion must be denied if, after viewing the evidence in the light most favorable to the state, reasonable minds can reach different conclusions as to whether each element has been proven beyond a reasonable doubt. Id.; State v. Bridgeman (1978), 55 Ohio St.2d 261, 263.
 {¶ 52} Upon viewing the evidence presented by the state in the light most favorable to the state, we conclude that a reasonable mind could find that appellant knowingly aided and abetted others in the conveyance or attempted conveyance of drugs onto the grounds of the detention facility. Contrary to appellant's arguments, the tapes (admissible as discussed supra) sufficiently connect her to the offense. A rational person could conclude that appellant followed the instructions to purchase drugs, handle drugs, package drugs into a green bottle, and/or deliver this package to others with instructions on where to make the final delivery. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 53} Appellant's third assignment of error provides:
 {¶ 54} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING THE MOTION OF THE DEFENDANT TO STRIKE THE TESTIMONY OF JOHN DAKE."
 {¶ 55} After the investigator testified, appellant made a motion to strike his testimony with regard to his knowledge of appellant's voice. (Tr. 63-65). Appellant made the same arguments presented under the first subassignment in assignment of error number one. The proper resolution of this issue was stated above as: "Under the circumstances testified to by the investigator, the trial court did not abuse its discretion in determining that the state sufficiently authenticated and identified the voice on the tapes as belonging to appellant." If the trial court did not err in finding her voice authenticated, then the court did not err in refusing appellant's motion to strike the investigator's testimony on grounds of a lack of authentication.
 {¶ 56} Appellant next contends that the motion to strike should have been granted because the investigator's testimony was also based upon the hearsay in the tapes. However, appellant failed to make this argument to the trial court when voicing the motion to strike. Rather, appellant's motion to strike focused on the authentication argument. (Tr. 63-65). As such, this argument is waived. Regardless, we addressed the hearsay complaints under the second subassignment in assignment of error number one, and resolved the issue in the state's favor.
 {¶ 57} Under this assignment, appellant also complains that neither the original or duplicates of the tapes were "introduced" into evidence, citing Evid.R. 1002 and 1003. Pursuant to Evid.R. 1002:
 {¶ 58} "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."
 {¶ 59} Evid.R. 1003 then adds:
 {¶ 60} "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."
 {¶ 61} We note that the recordings were played from a compact disk presumably downloaded off the prison's mainframe computer, which could not easily be transported into court. Regardless, appellant did not raise a question as to the authenticity of the original and there was no argument that it would be unfair to admit the duplicate in lieu of the original. See State v. Tibbetts (2001), 92 Ohio St.3d 146 (defendant has burden of raising issue and demonstrating why duplicate should be excluded).
 {¶ 62} Nonetheless, the crux of appellant's argument is actually that the tapes, duplicate or otherwise, were never labeled as exhibits and admitted into evidence. Initially, we note that appellant fails to indicate where in the record she objected to the failure to label the disk or the recordings on it as exhibits and the later failure to seek admission of the physical disk itself as an exhibit; just as she does not point to where she voiced any problems with Evid.R. 1002 or 1003. This lack of objection at a time that the error could have been cured constitutes waiver for purposes of appeal, and plain error is not apparent. See Crim.R. 52(B).
 {¶ 63} Further, although the recordings were not labeled as exhibits, they were played into the record. However, as appellant notes, the court reporter failed to transcribe this presentation of evidence. Appellant wonders how we can review the contents of the recordings as required by her other assignments of error if the tapes were not labeled and presented as exhibits and were not transcribed by the court reporter as they were played into the record. In response, this court ordered the record to be supplemented with the tapes under App.R.9(E), as they are part of the record which was not available as an official transcription. See, also, App.R. 9(C). As such, this argument is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 64} Appellant's fourth assignment of error provides:
 {¶ 65} "THE DECISION OF THE TRIAL COURT/JURY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 66} This assignment of error recaps some of the prior arguments and additionally contends that the verdict was against the manifest weight of the evidence. Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Reversing based on a determination that the verdict is against the manifest weight of the evidence requires this court to sit as the "thirteenth juror," which we are not permitted to do unless a unanimous panel is satisfied that the true jury clearly lost its way and created a manifest miscarriage of justice. Id. at 387, 389.
 {¶ 67} When two fairly reasonable views of the evidence or two conflicting versions of events exist, neither of which is unbelievable, we leave it to the jury to choose which version to believe. State v.Gore (1999), 131 Ohio App.3d 197, 201. The jury is in the best position to weigh the evidence. State v. DeHass (1967), 10 Ohio St.2d 230,231. For instance, the jury heard the tapes and could evaluate the declarants' voice inflections. See Seasons Coal Co. v. Cleveland (1994),10 Ohio St.3d 77, 80.
 {¶ 68} The jury could reasonably infer that the voice on the phone was that of appellant and that the construction materials referred to by the inmate and appellant were actually code for the drugs that were in fact dropped at the prison. Upon reading the trial transcript and listening to the tapes, a review of which is set forth in our statement of facts, we should refuse to sit as the "thirteenth juror" who claims that the jury clearly lost its way and created a manifest miscarriage of justice.
 {¶ 69} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs. DeGenaro, J., concurs.