[Cite as *State v. Brown*, 2021-Ohio-3591.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DAVID LEE BROWN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 JE 0021**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 20 CR 94

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor and *Atty. Frank J. Bruzzese*, Assistant Prosecuting Attorney, Jefferson County Justice Center, 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee

*Atty. Adam M. Martello*, P.O. Box 1484, Steubenville, Ohio 43952, for Defendant-Appellant.

Dated:  September 30, 2021

---

**WAITE, J.**

{¶1}    Appellant, David L. Brown challenges his conviction in the Jefferson County Common Pleas Court on one count of extortion in violation of R.C. 2905.11(A)(2) & (B), a felony of the third degree.  In addition, Appellant argues the trial court erred in permitting his recorded telephone calls from jail to be played for the jury in their entirety.  Finally, Appellant raises an ineffective assistance of counsel claim, based on defense counsel's failure to object to the admission that Appellant had been subject to a temporary protection order ("TPO") and the admission of recorded jail telephone calls made by Appellant.  For the following reasons, the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2}    Appellant was indicted on August 5, 2020 on one count of extortion, in violation of R.C. 2905.11(A)(2) & (B), a felony of the third degree.  The charge was based on telephone calls made by Appellant to Katrina Stewart ("Stewart") and Jessica Wood ("Wood") while being held in the Jefferson County Jail pursuant to an arrest in a separate matter, case number 2020 CRB 161.  In that case, the trial court had issued a TPO prohibiting Appellant, "from any contact with KATRINA DAWN STEWART and any family or household members until the disposition of this criminal proceeding."  (State's Exhibit 1.)  In addition, a $250,000 bond had been set in that case.  On July 10, 2020, Appellant made several calls to Stewart and Wood, which lead to the charges and conviction on which this appeal is based.  Recordings of his calls were entered into evidence at the trial in this matter.  The state maintained that the statements made by Appellant during the

Case No. 20 JE 0021

calls amounted to extortion. It is not clear from the record what the relationship between all of the parties is. Appellant resided with Stewart in her home prior to the incident which led to the issuance of the TPO. Appellant also appears to be in a relationship with Wood, who is apparently his paramour.

{¶3} A jury trial was held on his extortion charge on October 5, 2020. The state presented the testimony of two witnesses: Detective Lieutenant Joseph Lamantia ("Lamantia") from the Jefferson County Sheriff's Department, and Stewart.

{¶4} Lamantia testified that he had been listening to Appellant's phone calls from the jail as he routinely did during investigations to determine if additional evidence could be obtained in the matter involving the TPO. During this investigation, Lamantia said he heard threats being made by Appellant, which resulted in the extortion charge. (10/6/20 Tr., p. 146.) There were five phone calls in particular which all occurred on July 10, 2020. Lamantia began by describing the jail's telephone system, including that inmates are given individual PINs to use to make calls, and that all calls are recorded digitally. (10/6/20 Tr., p. 147.) The system database indicates from which jail phone the call is made, which PIN is used to make the call, the number that the inmate calls, as well as the date, time, and the duration of the call. (10/6/20 Tr., p. 148.) Lamantia identified Appellant as the individual who made the calls in question, stating that he knew Appellant's voice from speaking to him directly during his investigation and from listening to "well over a hundred" calls made from the jail by Appellant using his PIN. (10/6/20 Tr., pp. 150-151.) Lamantia also stated that he recognized Stewart's voice on the calls after speaking with her during the investigation, using the same phone number that Appellant used to call Stewart. (10/6/20 Tr., p. 152.) Lamantia also confirmed that the calls made

by Appellant were to a phone registered under Wood's name and that he recognized Wood's voice from his investigation of the TPO as well. (10/6/20 Tr., p. 154.) He testified that the subject of the telephone calls, Appellant's $250,000 bond, was a topic only known to Appellant. (10/6/20 Tr., p. 154.)

{¶5} Lamantia was questioned regarding the substance of each of the phone calls. Defense counsel objected on the grounds of hearsay. The state directed the court to the memorandum it had filed with the court on the issue prior to trial. In the memorandum, the state argued that Appellant's statements in the phone calls were admissible as admissions by a party opponent and that Stewart and Wood's statements were admissible based on Evid.R. 801(D)(2); Evid.R. 901(A), and this Court's holding in *State v. Spires,* 7th Dist. Noble No. 04 NO 317, 2005-Ohio-4471, ¶ 38 ("admissions by a party opponent include the statements or questions to which she responds; otherwise, the statements would mean nothing in many contexts.") After a discussion of the memorandum, the trial court ruled that Lamantia could testify regarding the substance of the phone calls. Lamantia gave a brief summary of each of the calls. He testified that Appellant called Stewart and, according to Lamantia, "[h]e was telling [Stewart] that she better put the house up for collateral so he can get the twenty-five thousand-dollar collateral towards the quart of a million-dollar bond." (10/6/20 Tr., p. 159.) He also testified, "[Appellant] belittled her during the conversation *** [h]e told her to look at her daughter, that if she didn't put that house up, that he would 'come take something' from her that she loved. The entire conversation was belittling and threatening towards her, towards [Stewart]." (10/6/20 Tr., p. 159.)

{¶6} During Lamantia's testimony the state also inquired about the existing TPO, issued just three days before the phone calls of July 10th. The following exchange occurred:

[PROSECUTOR] When he made that call, was there an order in effect, a court order signed by Judge Ferguson, in the Toronto County Court?

[LAMANTIA] Yes. There was a no-contact temporary protection order issued by Judge Ferguson that was served on the Defendant.

[PROSECUTOR] I'll ask the court reporter to mark a document as State's Exhibit Number 1.

(Whereupon, a document entitled "Temporary Protection Order" was then marked as State's Exhibit 1 for purposes of identification.)

[PROSECUTOR] As part of your investigation, did you go to the court and get a certified copy of that court order?

[LAMANTIA] Yes, I did, sir.

(10/6/20 Tr., p. 160.)

{¶7} The state then moved to admit the order into evidence and defense counsel replied, "no objection." (10/6/20 Tr., p. 161.) The state then published the order to the jury by having Lamantia read it into the record verbatim:

Upon motion of the complainant, DET. DAVID WOJTAS, for a temporary protection order, the Court conducted a hearing within 24 hours after said motion was filed, and upon the testimony presented, the Court finds that the safety and protection of KATRINA DAWN STEWART and any family or household members may be impaired by the presence of the alleged offender, DAVID L. BROWN.

WHEREFORE, the Court orders, as a pre-trial condition of release, that the alleged offender, DAVID L. BROWN, refrain from any contact with KATRINA DAWN STEWART and any family or household members until the disposition of this criminal proceeding. It is further ordered that the defendant not appear within a three block radius of the residence of KATRINA DAWN STEWART, being *** or wherever he/she and the family or household members may be found. Should the offender violate this temporary protection order, he/she shall be subject to penalties provided by law.

(State's Exhibit 1.)

{¶8} Because the defense contended in opening statements that Appellant was half owner of the house at issue, Lamantia testified that he went to the Jefferson County Recorder's Office and the Jefferson County Auditor's Office, where he obtained a deed and tax records for the property. Both showed Stewart as the sole owner of the property and that she paid the real estate taxes. A copy of the deed and the auditor's tax record were submitted into evidence with no defense objection.

Case No. 20 JE 0021

{¶9}     Next, the state moved to have the DVD of the calls admitted into evidence. It was admitted by the trial court without objection. (10/6/20 Tr., p. 169.) The phone calls were then played for the jury in their entirety.

{¶10}   The first call made by Appellant on July 10, 2020 was to Stewart at 1:10:40 p.m. and lasted two minutes and fifteen seconds. It is in this call that Appellant apparently learns that his bond was set at $250,000.00. Stewart told him she did not have the money or collateral to put up for the bond. Appellant seemed incredulous about the amount of the bond, stating that a bond that high should be reserved for a more serious crime, like attempted murder. Appellant continued to berate the police and the investigation before the two hung up.

{¶11}   The second call was placed to Wood, at 1:13:29 p.m. It lasted three minutes and fifteen seconds. Appellant discussed his arrest and charges surrounding the TPO. He also repeatedly berated Stewart to Wood, calling her "dummy," a "dumb bitch," and a "goofy motherf**ker." Appellant made no threats, but told Wood that Stewart did not understand the bail process.

{¶12}   The third call was placed to Stewart at 1:17:19 p.m. This call lasted six minutes and twenty-one seconds and is the longest of all of the calls. Appellant told Stewart she needed to put the house up for collateral because it was her fault he was sitting in jail. He told her that if he knew she was going to cause him so much trouble he would have "beat the pink off her ass." (State's Exhibit 4.) Appellant also told her he needed to get to his mother's funeral and could not be in jail. He threatened that if he did not get to his mother's funeral she would "feel his pain." (State's Exhibit 4.) The record reveals that Appellant could have made a request to be transported to his mother's

funeral, but had not. Appellant continued to belittle Stewart and told her repeatedly that she had to put the house up for collateral for the bond. Stewart told him she did not own the house outright, and asked him what would happen if he were to be convicted on other crimes and she lost her house. Appellant told her to look at her daughter, and that if she failed to put the house up for collateral, he told her, "I swear on my mother's soul and my children's lives" that he would "come take something that you love." Appellant continued to berate Stewart until she hung up on him.

{¶13} The fourth call played for the jury was Appellant's attempt to call Stewart back, but she did not answer and the call was sent to her voicemail.

{¶14} The fifth call was to Wood at 1:24:27 p.m. and lasted five minutes and twenty seconds. In this call, Appellant continued to belittle Stewart to Wood and said that Stewart did not know how the process works. He told Wood she needed to convince Stewart to put the house up as collateral and told Wood he would shoot Stewart's parents "in the face" if she did not put the house up for collateral. (State's Exhibit 4.)

{¶15} After the calls were played for the jury, the state called Stewart to the stand. Stewart confirmed she is the sole owner of the house discussed in the calls. She also testified that, after an altercation with Appellant, she left her home to stay with her sister before Appellant was arrested because she was "separating herself from [Appellant]." (10/6/20 Tr., p. 204.) Stewart refused to answer any questions regarding the TPO or the phone calls, invoking her Fifth Amendment right against self-incrimination.

{¶16} After Stewart testified, the state rested. Appellant did not testify or call any witnesses. The jury found Appellant guilty of extortion and the trial court sentenced Appellant to twenty-four months with credit for 88 days served.

**{¶17}** Appellant filed this timely appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

APPELLANT'S CONVICTION FOR EXTORTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶18}** Although in Appellant's first assignment he purports to argue manifest weight of the evidence, Appellant actually argues the sufficiency of the evidence presented by the state at trial.

**{¶19}** "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin–McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶20}** "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 7th Dist. No. 07 JE 45, 2009-Ohio-1023, ¶ 14, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). To discharge the state's burden when prosecuting a criminal offence, "'probative evidence must be offered' on 'every material element which is necessary to constitute the crime.'" *State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶ 8, citing *State v. Martin*, 164 Ohio St. 54, 57, 128 N.E.2d 7 (1955). In a sufficiency review, a reviewing court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 7th Dist. Mahoning No. 13 MA 34, 2015-Ohio-1882, ¶ 14, citing *State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34.

**{¶21}** Appellant was convicted of extortion pursuant to R.C. 2905.11(A)(2)&(B), which provides:

(A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:

* * *

(2) Threaten to commit any offense of violence;

* * *

(B) Whoever violates this section is guilty of extortion, a felony of the third degree.

**{¶22}** Appellant contends that the state failed to present evidence at trial that Appellant made a threat as defined in the statute. Thus, he claims the state failed to establish one of the elements of extortion.

**{¶23}** The state contests Appellant's argument and contends the evidence presented clearly demonstrated that Appellant made threats to commit an offense of violence as required under R.C. 2905.11(A)(2).

**{¶24}** R.C. 2905.11 prohibits threatening to commit any offense of violence. The threat can be either direct or by innuendo. R.C. 2905.11(C). A threat can be "a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction or lawful harm, such as exposing the victim's own misconduct." *State v. Cress,* 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 39. Moreover, the

threat need not be in writing and may involve harm to someone other than the recipient of the threat. R.C. 2905.11, Legislative Service Commission Comment (1973). Finally, the circumstances of the situation as well as the relations between the parties may be considered to ascertain whether the language used conveyed a threat. *State v. Brunswick,* 69 Ohio App. 407, 424, 44 N.E.2d 116 (8th Dist.1941). The "perpetrator need not have expressly detailed what exact harm he is threatening." *State v. Thompson,* 7th Dist. Columbiana No. 13 CO 20, 2014-Ohio-1225, ¶ 19.

**{¶25}** In the instant case the state presented the five calls made by Appellant to Stewart and Wood. In the calls, Appellant (whose identity on the calls was not challenged at trial) can clearly be heard making several threatening comments to Stewart directly and to Wood about Stewart. The comments were both direct and by innuendo. In the third call, made to Stewart, Appellant said he should "beat the pink off [Stewart's] ass," which is clearly a threat of a violent offense under R.C. 2905.11(A)(2). During that same call, after Stewart expressed an unwillingness to put her house up for collateral, Appellant told Stewart, "see that little girl you got right now?" followed by telling her he would "take something that you love," which is a direct threat of bodily harm. (State's Exhibit 4.) Also in the call, Appellant became increasingly angry. He continued berating Stewart and warned her that if she did not put her house up for collateral so he could get out on bond, "I swear on my mother's soul and my children's lives you will feel my pain." (State's Exhibit 4.) Again, an example of a direct threat under R.C. 2905.11(A)(2).

**{¶26}** In the fifth call, made to Wood, Appellant told Wood that if Stewart did not cooperate he would "shoot [Stewart's] mom and dad in the face," a threat which involved

physical violence made to someone other than the target of the threat. (State's Exhibit 4.)

**{¶27}** In addition to the actual words Appellant used, surrounding circumstances here include Appellant's increasingly loud volume as he became more frustrated. Appellant's calls were laced with profanity and he consistently spoke in a loud and abusive tone in each call as it became clear that Stewart was not going to do what he asked. Based on this record, the state's case was sufficient to take to the jury. The state presented adequate evidence on each element of the offense, including evidence of a threat pursuant to statute. There was evidence of direct threats as well as language from which rational inferences could be made as to Appellant's intent.

**{¶28}** Appellant's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

IT WAS ERROR FOR THE TRIAL COURT TO PERMIT THE PLAYING OF THE ENTIRETY OF APPELLANT'S JAIL CALLS.

**{¶29}** In his second assignment, Appellant does not argue that the phone calls should have been excluded altogether but, rather, that they should not have been played for the jury in their entirety. Specifically, Appellant contends: (1) that the statements made by Stewart and Wood in the calls were impermissible hearsay; and (2) the statements made by Appellant that did not contain threats or "suggest the purpose of a threat" were not relevant under Evid.R. 401, and, even if relevant, were unfairly prejudicial to Appellant. (Appellant's Brf., p. 13.)

{¶30}  The state argues that according to our holding in *State v. Spires,* 2005-Ohio-4471, ¶ 38, the statements made by Stewart and Wood are admissible as they include the statements or questions to which Appellant was responding while making his threats, and must be included for context in order for the threats to be fully understood.  The state also argues that all statements made by Appellant during the calls are admissible as admissions by a party opponent and that they were relevant and not unfairly prejudicial to Appellant.

*{¶31}*  The admission of evidence lies within the broad discretion of the trial court. *State v. Issa,* 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).  Thus, a reviewing court will not disturb evidentiary decisions of the trial court absent an abuse of discretion that has created material prejudice.  *Id.*

{¶32}  Pursuant to Evid.R. 801(D)(2), an admission by a party opponent is not hearsay.  A statement is admissible if:

> The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, *** or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

{¶33}  In *Spires,* similar to the instant matter, the appellant challenged phone calls made by her which were played in their entirety to the jury at trial.  Spires was indicted on

two counts of illegally conveying drugs onto the grounds of a detention facility. She filed a motion in limine to exclude recordings of telephone calls between her and an inmate. She filed a second motion in limine to exclude calls between that inmate and other individuals. *Spires,* ¶ 11. The trial court denied the motions and admitted the phone calls in their entirety. On appeal, Spires conceded her own statements in the phone calls would be admissions by a party opponent but that any statements by anyone else in the calls was impermissible hearsay. *Id.* at ¶ 35. We held that all of the statements by Spires were admissible under Evid.R. 801(D)(2) as admissions by a party opponent. In addition, we stated:

> As appellant concedes, taped statements attributed to her are not hearsay. Evid.R. 801(D)(2)(a). However, she fails to recognize that admissions by a party opponent include the statements or questions to which she responds; otherwise, the statements would mean nothing in many contexts. See, e.g., *State v. Twitty,* 2d Dist. No. 18749, 2002-Ohio-5595, ¶ 27 (witness can testify to conversation overheard between defendant and his mother, including statements made by mother). As specified in the rule, it is not just the defendant's own words but the words of others which she manifests her adoption.

*Id.* at ¶ 38.

{¶34} The phone calls at issue here are clearly dominated by Appellant, with very few statements made by either Stewart or Wood. Stewart's comments relate to informing Appellant of the size of his bond and repeated comments expressing her hesitation to put

her house up for collateral. Wood's statements include informing Appellant about obtaining counsel and trying to get his bond reduced. However, without the inclusion of the statements by Stewart or Wood, Appellant's responses to those statements would be rendered, if not meaningless, certainly difficult to ascertain. *Spires,* ¶ 38; see also *State v. Harrison,* 7th Dist. Jefferson No. 19 JE 0009, 2020-Ohio-3624, ¶ 29. For example, without Stewart's statement informing Appellant his bond was set at $250,000, Appellant's sudden anger and berating of Stewart would have no context. Similarly, it was Stewart's comments that she did not want to put her house up for collateral which led to Appellant's berating and multiple threats. Wood stated that Appellant needed to talk to his lawyer about getting his bond reduced and expressed her willingness to assist him in getting Stewart to put her house up for collateral. In response to these comments, Appellant berated Stewart to Wood, calling her a "dumb bitch." He also threatened to shoot Stewart's parents in the face. Because the entire dialogue is necessary to provide context for the purpose and nature of Appellant's threats, in accordance with our holding in *Spires,* the trial court did not abuse its discretion in admitting the portions of the calls containing statements by Stewart and Wood. *Id.* at ¶ 38

**{¶35}** Appellant also challenges the admissibility of his own statements in the calls that did not contain any alleged threats or indication of a purpose to threaten, claiming they were not relevant to prove the state's case and, even if relevant, their probative value is substantially outweighed by the danger of unfair prejudice.

**{¶36}** As previously noted, an admission by a party opponent is not hearsay. Evid.R. 801(D)(2). Although not hearsay, the statements are admissible only if they are relevant. Evid.R. 401, 402. In addition, even if the statement is relevant, it may still be

excluded if its probative value is substantially outweighed by "considerations of undue delay or needless presentation of cumulative evidence." Evid.R. 403(B). Appellant argues that any statements that do not contain a threat or provide an underlying reason for a threat are not admissions under Evid.R. 801(D)(2). Appellant also argues that allowing the jury to hear the "astonishingly vulgar and profane" calls where he continually berated Stewart calling her "dumb," a "bitch" and a "mother*****r" were not threats. Thus, they were not relevant. In the alternative, Appellant claims that even if these statements were relevant, their minimal probative value is outweighed by the danger of unfair prejudice.

{¶37} A similar argument was made before us in *State v. Townsend,* 7th Dist. Mahoning No. 04 MA 110, 2005-Ohio-6945. In *Townsend,* the appellant was convicted of aggravated murder and argued that the trial court erred in admitting a letter he wrote from jail as the profane, inflammatory statements were not relevant and any probative value was outweighed by the danger of unfair prejudice. We held that the written statements by the appellant were relevant. They implicated him as the shooter and, though profane and vulgar, their probative value outweighed any danger of unfair prejudice. *Id.*, ¶ 61.

{¶38} In the instant matter, the name-calling and aggressive language used by Appellant to Stewart during the calls was highly relevant in establishing context for Appellant's multiple threats to Stewart. As the calls progressed, Appellant became increasingly frustrated with Stewart and his name-calling and berating accelerated, ending in the threats of harm to Stewart, her daughter, and her parents. The jury could hear Appellant's statements within context to provide a basis for Appellant's subsequent

threats.  Thus, the trial court did not abuse its discretion in admitting the jail phone calls in their entirety.

**{¶39}** Appellant's second assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

APPELLANT'S TRIAL COUNSEL FAILED TO OBJECT TO IRRELEVANT AND PREJUDICIAL EVIDENCE, RESULTING IN INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶40}** The test for an ineffective assistance of counsel claim is two-part: whether trial counsel's performance was deficient and, if so, whether the deficiency resulted in prejudice.  *State v. White*, 7th Dist. Jefferson No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107.  In order to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *State v. Lyons*, 7th Dist. Belmont No. 14 BE 28, 2015-Ohio-3325, ¶ 11, citing *Strickland* at 694.  The appellant must affirmatively prove the alleged prejudice occurred.  *Id.* at 693.

**{¶41}** As both are necessary, if one prong of the *Strickland* test is not met, an appellate court need not address the remaining prong.  *Id.* at 697.  The appellant bears the burden of proof on the issue of counsel's effectiveness, and in Ohio, a licensed attorney is presumed competent.  *State v. Carter*, 7th Dist. Columbiana No. 2000-CO-32,

2001 WL 741571 (June 29, 2001), citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

**{¶42}** When a claim for ineffective assistance of counsel is made based on a failure to file an objection or a motion, the appellant must demonstrate that the objection or motion had a reasonable probability of success. If the objection or motion would not have been successful, then the appellant cannot prevail on the ineffective assistance of counsel claim. *State v. Adkins,* 161 Ohio App.3d 114, 2005-Ohio-2577, (4th Dist.) ¶ 14. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *State v. Bradley,* 42 Ohio St.3d 136, 142, fn. 1, 538 N.E.2d 373, quoting *Strickland,* at 693.

**{¶43}** Appellant contends trial counsel was ineffective for failing to object to the admission of and testimony regarding the TPO, and the admission and playing of the phone calls in their entirety.

<u>Failing to Object to the TPO</u>

**{¶44}** Appellant contends trial counsel should have objected to Lamantia's testimony regarding the TPO and the admission of the TPO. Specifically, Appellant asserts he was not charged with violating the order or on any other charge relating to the order. Appellant argues its admission resulted in the jury being unfairly biased against Appellant, which resulted in prejudice. Thus, Appellant is essentially challenging the admissibility of the TPO under Evid.R. 404(B), other bad acts grounds.

**{¶45}** The state contends the TPO was properly admitted for several reasons: (1) there was no objection by defense counsel; (2) it was relevant to "show the context and immediate background" of Appellant's words, conduct and present crime" (3) it was

relevant to show Appellant's motive and state of mind; (4) it showed Appellant's "wrongful intent"; (5) it showed "similarity and a pattern of an unsafe threatening presence" of Appellant; (6) it showed Stewart could participate in the violation of the TPO with "no punishment for the protected party's activity" and (7) it was relevant to show why Stewart was reluctant to testify at trial. (Appellant's Brf., pp. 20-21.)

**{¶46}** Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may, however, be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Similarly, R.C. 2945.59 permits the admission of other acts evidence tending to show a defendant's "motive, or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question." Moreover, evidence of other acts is admissible if: (1) it is offered for a purpose other than to prove the character of a person in order to show conduct in conformity with that character (Evid.R. 404(B)); (2) it is relevant (Evid.R. 401); and (3) the danger of unfair prejudice does not substantially outweigh its probative value (Evid.R. 403). *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶47}** Here, the state introduced a copy of the TPO into evidence and had Lamantia read it into the record in its entirety in the midst of his testimony about Appellant's jail calls. Although Appellant correctly asserts that he was not charged with violating the TPO directly, the existence of a TPO that had been issued just three days prior to the threatening phone calls is highly relevant to establishing the threat posed to Stewart by Appellant. Similarly, Appellant was aware he was the subject to the TPO and

yet contacted Stewart several times, berating her and physically threatening her. The TPO provided context as to why Appellant's multiple threats would cause Stewart apprehension. Here, the TPO was not introduced for the purpose of showing Appellant's propensity for violence. The TPO provided background that aided the jury in understanding the import of and circumstances surrounding the threatening phone calls to Stewart. Accordingly, we find an objection to the TPO would not have had a reasonable probability of success.

### Failing to Object to the Jail Calls

**{¶48}** Appellant also contends trial counsel was ineffective for failing to object to the phone calls being played for the jury in their entirety. As we have already determined the phone calls were not hearsay and were admissible in our analysis of Appellant's second assignment of error, we cannot conclude that an objection to the phone calls in their entirety would have had any reasonable probability of success.

**{¶49}** Thus, we find that neither of the two alleged errors raise questions of ineffective assistance of counsel.

**{¶50}** Appellant's third assignment of error is without merit and is overruled.

**{¶51}** For the reasons stated above, Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 20 JE 0021

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## **NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**